FILED
2008 May-19 PM 12:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| VS. | ) | 2:95-cr-129-JHH-TMP |
| WILLIE CLAY MEANS, | ) | |
| Movant. | ) | |

### MEMORANDUM OF OPINION REGARDING ORDER DENYING MOTION TO REDUCE TERM OF IMPRISONMENT

The movant filed the above-styled motion (Doc. #1653), commonly referred to as an 18 U.S.C. § 3582(c)(2) motion, on February 19, 2008, which the court treats as a timely motion requesting that this court modify or reduce his sentence pursuant to the retroactive crack cocaine amendment to the Sentencing Guidelines which became effective on November 1, 2007.[1] Before the court directs its attention to subject motion, it will set forth briefly relevant background, including a small portion of the lengthy history of movant's case.

---

[1] On April 25, 2008, he also filed a motion to expedite the 18 U.S.C. § 3582 proceeding (Doc. #1665). That motion is dismissed as moot in light of the order accompanying this memorandum.

On March 18, 1996, following a jury trial of approximately two months,[2] Willie Clay Means (movant) and numerous persons related to him, as well as a number of persons unrelated to him, were convicted on March 18, 1996 under Count 2 (of a 133 count indictment) of violating 21 U.S.C. § 846 by conspiring to distribute and possess with intent to distribute cocaine base (crack cocaine).[3] Such conspiracy is herein referred to as the Means conspiracy. The following is a summary description, supported by the evidence at trial, of the Means conspiracy taken from the presentence investigation report prepared by the court's probation office for purposes of sentencing movant.

> The Means conspiracy began in or about 1988 and ended May 25, 1995, when the indicted co-conspirators were arrested. This conspiracy involved the defendants named in the indictment as well as others who have not been indicted. Members of the conspiracy had varying roles and degrees of involvement and entered the conspiracy at various times. In furtherance of the conspiracy, the defendants did the following:
>
> The defendants obtained cocaine and crack cocaine from various distribution points known as "crack houses" in Birmingham, Alabama. These crack houses were real property which the defendants and others located and used to store or "stash" cocaine and cocaine base prior to its distribution, as a pick-up point for

---

[2] The undersigned was the trial and sentencing judge and is unusually familiar with the facts and all the court proceedings, including the countless post conviction proceedings initiated by movant, as well as many other defendants.

[3] Willie Clay Means was also convicted under thirty-three related substantive counts and found not guilty as to one count. Numerous other counts did not name him as a defendant or were dismissed prior to trial.

2

distribution to other locations, and as a point from which to sell the cocaine and crack cocaine to customers, including minors. This operation began with one crack house, and later on into the conspiracy, as many as 10 crack houses were operated at one time.

Some of the defendants taught indicted and unindicted co-conspirators how to manufacture or "rock up" the crack from cocaine in its powdered form. Some defendants received large sums of cash for selling and distributing cocaine and crack cocaine. Some were paid in cash or drugs ("tops" or 10% of drugs sold) for selling, storing, and distributing the drugs. During the conspiracy period, minors were used to distribute drugs, and drugs were distributed near schools and playgrounds.

Firearms were used and carried by some defendants to enforce collection of drug proceeds and to protect the proceeds from drug sales. Some defendants allegedly attempted to arrange for acts of violence to be committed against a law enforcement officer and a witness.

The defendants purchased vehicles which were used to transport cocaine and crack cocaine to customers, and to travel to and from various sites in the facilitation of controlled substance distribution.

The defendants and others developed surveillance and counter-surveillance techniques and information sources both within and outside of law enforcement agencies so that co-conspirators could be notified of pending searches, raids, and arrests.

The defendants and others used standard telephones, cellular and mobile telephones, and pagers to facilitate the drug distribution conspiracy and the collection and distribution of proceeds from drug distribution. Business procedures were established where coded language was used to represent drugs and monetary transactions but with minimal discussion of drugs and money. The defendants used "street names" or aliases to communicate with each other to prevent law enforcement from determining their true identities.

A "front" business, Father and Son's Car Wash, was established and maintained under the guise of being a legitimate business, in order to attempt to conceal both the drug trafficking operation and its profits. Cocaine, crack, marijuana, and drug paraphernalia such as crack pipes, crack baggies, scales, etc., were sold from the building on both a wholesale and retail basis. A system was devised for obtaining, processing, distributing controlled substances/drug proceeds, and for secreting the proceeds, which ensured the continuity of the operation.

In order to avoid the filing of Currency Transaction Reports and the I.R.S. Form 8300, some of the defendants structured financial transactions. Real [sic] personal property was bought with the proceeds from drug-related activities and was often held in nominee names to prevent law enforcement from determining the source of the proceeds and the location of the property.

The defendants and others attempted to persuade co-conspirators to withhold information from investigators and the Grand Jury for the Northern District of Alabama. The defendants prepared false affidavits for co-conspirators, and attempted to persuade co-conspirators to give false statements to law enforcement and perjure themselves before the Grand Jury.

On March 19, 1996 the court dictated into the record its *attribution of drug quantities* to the members of the conspiracy found guilty under Count 2 of the indictment. The court expressly found that <u>all of the defendants</u> convicted under Count 2 were actively involved in the conspiracy at least as early as May 1, 1994, and remained engaged in criminal activity related to the conspiracy until May 25, 1995. As a result of each defendant's acts in furtherance of the conspiracy, and as a result of reasonably foreseeable acts on the part of other conspiracy members in

4

furtherance of the conspiracy, a quantity **in excess of 2.3 kilograms of cocaine base or crack cocaine** was attributed to each of such defendants, including Willie Clay Means, for purposes of sentencing. Further, with regard to seven of the numerous members of the conspiracy, including Willie Clay Means, the court found that each of those defendants (excluding defendants Antonio King and Jessie Turner) was also a member of the conspiracy from January 22, 1993, until May 1, 1994. As a result of such defendants' acts during that time frame in furtherance of the conspiracy and as a result of reasonably foreseeable acts on the part of other conspiracy members in furtherance of the conspiracy, a quantity **in excess of 2.7 additional kilograms of cocaine base or crack cocaine** was attributable to each of those defendants, including Willie Clay Means, for purposes of sentencing. Such amounts were premised on the March 19, 1996 conservative findings by the court as to daily sales (seven days a week) of at least six grams (sixty dime bags) of crack cocaine from at least one of the crack houses for the relevant time frame. Thus, on March 19, 1996 the court attributed to each defendant who was a member of both conspiracies, including movant Willie Clay Means, **a quantity in excess of 5.0 kilograms of cocaine base or crack cocaine.**

In May 2007, the U. S. Sentencing Commission (U.S.S.C.) submitted a group of proposed amendments to the Sentencing Guidelines as they have done

annually since 1987. One of these amendments, #706, represented the U.S.S.C.'s attempt to mitigate the sentencing disparity for defendants convicted of crack cocaine offenses as opposed to powder cocaine offenses. In the absence of congressional action to amend the 100:1 ratio found in the Title 21 statutes, the U.S.S.C. proposed a method to reduce the potential sentences by lowering the applicable guidelines for quantities of crack by two levels, thereby creating a ratio ranging from about 25:1 to about 80:1 within the Guidelines framework.

All of the proposed amendments, including the crack amendment, became effective on November 1, 2007.[4] Then in December 2007, following a period of public discussion, the U.S.S.C. decided to make the crack amendment retroactive. The effective date for retroactive application of the crack amendment became March 3, 2008. The U.S.S.C. also amended Guideline § 1B1.10 to include the crack amendment (hereinafter referred to as "the amended policy statement"). As such, as of March 3, 2008, the crack amendment and amended policy statement apply to all relevant sentences, old and new. All of this was done pursuant to the U.S.S.C.'s authority found at 28 U.S.C. § 994(u) and 18 U.S.C. § 3582(c).

With that background, the court now turns to the current motion (Doc. #1653) of Willie Clay Means to modify his term of imprisonment under 18 U.S.C.

---

[4] At this point, the crack amendment had no retroactive application.

§ 3582(c)(2). The motion seeks the benefit of the crack amendment and the amended policy statement.

The focus of the § 3582(c)(2) motion is the LIFE terms of imprisonment imposed upon movant under Counts 2, 5, 11, 101, and 102.[5] At the time the defendant was sentenced for his participation in the far-reaching conspiracy under Count 2, this court made specific findings regarding the attribution of drug quantities to movant (and other members of the conspiracy), and found that movant, Willie Clay Means, was actively involved in distributing and/or manufacturing a quantity in excess of five kilograms of crack cocaine.

The relevant penalties for Counts 2, 5, 11, 101, and 102 are set forth at 21 U.S.C. § 841 (b)(1)(A).[6] The provisions thereof provide that if the defendant commits the violation after "two or more prior convictions for a felony drug offense have become final, such person **shall be sentenced to a mandatory term**

---

[5] The court also imposed concurrent "term" sentences under Counts 6, 12, 18, 25, 26, 28, 31, 32, 33, 34, 35, 55, 60, 62, 64, 65, 68, 69, 70, 74, 93, 96, 97, 98, 105, 107, 123, 124 and 126, plus a concurrent sentence of LIFE imprisonment under count 3, which carried a penalty of not less than 10 years and not more than life under 21 U.S.C. § 841(b)(1)(B) and 21 U.S.C. § 851. These sentences have no effect on the life sentences under Counts 2, 5, 11, 101 and 102 which the court views are the proper focus of movant's motion and therefore do not form the basis for the denial of the instant motion.

[6] This penalty section applies "[i]n the case of a violation ... involving (ii) 5 kilograms or more of a mixture containing a detectable amount of ... cocaine .... or (iii) 50 grams or more of a mixture or substance ... which contains cocaine base ...." 21 U.S.C. § 841 (b)(1)(A). Thus, the statutory framework established a 100 to 1 ratio.

**of life imprisonment without release.**" 21 U.S.C. § 841(B)(1)(A) (emphasis added).[7] There is no discretion for the court in such a case. Following a hearing on May 24, 1996, the court entered an order that the requisite two prior drug offense convictions had become final. Accordingly, the statutory mandatory life imprisonment without release was required for Counts 2, 5, 11, 101 and 102.

The following chart sets forth the application of the crack amendment to the instant case:

|  | **Original Sentence** | **Retroactive Sentence Adjustment** |
|---|---|---|
| **Total Offense Level** | 46 |  |
| **Criminal History Category** | VI |  |
| **Imprisonment Range** | LIFE |  |
| **Departure** | N/A |  |
| **Sentence Imposed** | STATUTORY MANDATORY LIFE in counts 2, 5, 11, 101, and 102 |  |
| **Rule 35(b)/Remand** | N/A |  |
| **Projected Release Date** | none |  |

---

[7] The government filed the necessary documents pursuant to 21 U.S.C. §851 on August 7, 1995, to trigger the enhanced penalties at 21 U.S.C. § 841 (b)(1)(A).

8

Pursuant to U.S.S.G § 1B1.10 (a)[8], this court finds that the movant is not eligible for consideration for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2).

A separate order will be entered denying the motion. Movant's attention is directed to the "Notice Concerning Appeals" set out below.

## NOTICE CONCERNING APPEALS

A § 3582(c) motion is considered a continuation of the criminal proceeding. A notice of appeal must be filed within ten days from the entry of the judgment or order being appealed. *See United States v. Fair*, 326 F.3d 1317, 1318 (11th Cir. 2003); *United States v. Starks*, 2008 WL 351386 (11th Cir. 2008); *Fed. R. App. P.* 4(b)(1)(A)(i). If the movant was represented by appointed counsel in the Northern District of Alabama at a trial or on appeal, movant will not be required to file a new application to proceed *in forma pauperis* on appeal from the denial of the § 3582(c)(2) motion. That status will be granted for appeal purposes. If movant was represented by counsel at trial or on direct appeal but believes he is now

---

[8] U.S.S.G § 1B1.10 (a), comment. (n.1 (A)(ii)(effective March 3, 2008) reads as follows: "Eligibility – ... Accordingly, a reduction in the defendant's term of imprisonment is not authorized... if ... (ii)an amendment ... does not have the effect of lowering the defendant's applicable guideline range because of the operation of another ... statutory provision (e.g., a statutory mandatory minimum term of imprisonment)."

unable to afford counsel, movant should file an application to proceed *in forma pauperis* (accompanied by a certified copy of prison account statements for the last six months) when a notice of appeal from the denial of the § 3582(c)(2) motion is filed. The Clerk is **DIRECTED** to provide the movant with an application to proceed *in forma pauperis*.

**DONE** this the ___19th___ day of May, 2008.

*James H. Hancock*
_____
SENIOR UNITED STATES DISTRICT JUDGE